## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GOODWAY GROUP, INC.,

  *Plaintiff,*

v.

              Case No. 24-cv-2528-EFM

RACHEL PAKZADEH,

  *Defendant.*

### MEMORANDUM AND ORDER

Plaintiff Goodway Group, Inc. ("Goodway") accuses its former employee, Defendant Rachel Pakzadeh, of breaching the confidentiality and non-solicitation provisions of her Employment Agreement. Currently before the Court are the parties' cross-motions for summary judgment (Docs. 54 and 58). As set forth in more detail below, the Court grants Pakzadeh's Motion for Summary Judgment and denies Goodway's Motion for Summary Judgment.

### I.  Factual Procedural Background[1]

Goodway is a digital media and marketing services firm with its principal place of business in New York. Pakzadeh began working for Goodway as an Account Coordinator in late 2012. On November 18, 2012, Pakzadeh executed an Employment Agreement with Goodway that contains

---

[1] Unless otherwise noted, the facts set forth in this section are uncontroverted.

confidentiality and non-solicitation restrictions. The Employment Agreement defines Confidential Information and Trade Secrets as follows:

> 'Confidential Information and Trade Secrets' includes, but is not limited to, all manuals, books, training materials, forms and procedures, instructions, policies, customer lists, price lists, marketing plans and strategies, financial information, and/or other entities or opportunities, software and documents relating to any of the foregoing, and other written and oral materials which are related to the business of the Company and the confidentiality of which the Company attempts to maintain with reasonable efforts and which the Company has not released to the general public.

The Employment Agreement's confidentiality provision further states that Pakzadeh may not use or disclose the Confidential Information and Trade Secretes at any time except as required in the course of her employment with Goodway. It further states that all documents Pakzadeh created during the course of her employment were Goodway's property and not to be shared with a third party.

In addition, the Employment Agreement contains a non-solicitation provision that prohibits Pakzadeh from contacting, soliciting, attempting to solicit, or causing to be solicited Goodway's clients or employees for a period of one year following her termination.

Pakzadeh's employment with Goodway ended on September 13, 2024. At the time, she held the position of Senior Director, Client Experiences. Pakzadeh received positive performance reviews and had no disciplinary actions during her time with Goodway.

On September 16, 2024, Pakzadeh began a new job at AI Digital. This case arises out of Pakzadeh's conduct shortly before she resigned from Goodway and the beginning of her new position with AI Digital.

**A.    Pakzadeh interviews with AI Digital and sends documents to the company.**

On August 16, 2024, Pakzadeh interviewed with AI Digital's co-founder, Elizabeth Bortnikova. After the interview, Pakzadeh shared the following documents via email with Bortnikova: a "health check" document, written definitions for the numerical rankings on the health check document, and a client survey she used at Goodway to monitor client satisfaction. The parties do not differentiate between these documents in their briefs and collectively refer to them as the "health check" documents.

Goodway's corporate representative, Amy Krauss, testified that she took the "health check" documents from her previous employer and gave it to Pakzadeh to use. Pakzadeh testified that she used her general knowledge of the industry to modify them.

The "health check" documents contain references to Strategic America, one of Goodway's clients. Specifically, the document mentions that Strategic America's niche is multichannel local businesses and that Strategic America believes Goodway's project deadlines are not fair or realistic. Goodway considers both pieces of information about Strategic America to be confidential information.

Pakzadeh has not consulted or used the health check document in her role at AI Digital, and AI Digital also has not used the documents.

**B.    Pakzadeh downloads documents from her work laptop to a USB device.**

On the same day she interviewed with AI Digital, Pakzadeh downloaded her personal folder from Goodway's Egnyte system (the company's storage system) and copied it onto an external USB device. Shortly thereafter, Pakzadeh received an "unusual access" email from Technology Business Solutions ("TBS"), which is the group that handles technical issues for Goodway. The email indicated that there had been unusual activity on her computer in that it

showed a significant number of documents were accessed, viewed, or downloaded. Pakzadeh flagged the email as a phishing attempt, but TBS confirmed it was legitimate. Pakzadeh then emailed TBS to ask what the email meant. No one at TBS responded to her email, so Pakzadeh concluded that nothing was required in response to the "unusual access" email. What Pakzadeh did not know is that her desktop automatically backed up to her private folder, and thus she had copied her entire desktop to her USB device. Later, Goodway's information security manager acknowledged that TBS "dropped the ball" on communication with Pakzadeh in that it did not respond to whether she needed to do something in response to the "unusual access email."

During her tenure at Goodway, and particularly as she prepared to onboard her replacement before departing from Goodway, Pakzadeh frequently downloaded documents from Egnyte to her desktop so she could work offline in alternate locations. Goodway did not consider this an improper practice.

On October 11, 2024, Goodway sent Pakzadeh a letter demanding that she preserve the information she downloaded from Goodway before her resignation so that an analysis could be completed of what was taken and used. After receiving the letter, Pakzadeh checked the USB device she had used to copy her personal folder and saw that it contained a folder labeled "desktop." The "desktop" folder contained Goodway documents that were on her desktop. Pakzadeh immediately deleted the folder.

## C.   Pakzadeh begins working at AI Digital.

During the first couple months of her employment at AI Digital, Pakzadeh emailed and met with several people from Strategic America. For example, in October of 2024, Pakzadeh traveled to Des Moines, Iowa, along with former Goodway employee Amy O'Hara. During the trip, Pakzadeh met with several Strategic America employees for dinner and attended a meeting

between AI Digital and Strategic America to discuss AI Digital's capabilities. Pakzadeh contends that her purpose for going on the trip was primarily social, while Goodway contends that Pakzadeh's purpose was to use the relationship she developed with Strategic America at Goodway to sell AI Digital's expertise.

During the visit to Des Moines, Pakzadeh also had coffee with Andi McIlwee, a Media Strategist, from Rooster—another Goodway client. Goodway has no actual knowledge of what Pakzadeh and McIlwee discussed during this meeting. Pakzadeh contends that it was a purely social meeting.

As part of her work with AI Digital, Pakzadeh also contacted representatives from 360 Group, John Deere, and VML, and she attended a client meeting with John Deere. These companies are also Goodway clients. On December 11, 2024, AI Digital directed that Pakzadeh be removed from all correspondence related to Rooster, Strategic America, John Deere, VML, and 360 Group, the main client accounts Goodway was concerned about.

**D.    This Litigation**

On November 15, 2024, Goodway filed this lawsuit asserting two breach of contract claims. First, Goodway asserts that Pakzadeh breached the confidentiality provision of her Employment Agreement by emailing confidential documents to AI Digital after her interview on August 16, 2024, and by downloading confidential documents to a personal USB device and failing to return them after her employment ended. Second, Goodway asserts that Pakzadeh breached the non-solicitation provision of her Employment Agreement by contacting and soliciting former Goodway clients when she began working for AI Digital.

Goodway does not seek monetary damages. Instead, it requests an injunction prohibiting Pakzadeh from working for AI Digital for the one-year period set forth in the Employment

Agreement. Goodway and Pakzadeh have filed cross motions for summary judgment on Goodway's claims.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]

To prevail on a motion for summary judgment on a claim upon which the moving party bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[4] Conversely, to prevail on a claim on which the movant does not bear the burden of proof at trial, the "movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[5] The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[5] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

motion for summary judgment.[7] The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[8]

Where, as here, the parties file cross-motions for summary judgment, the Court will consider them separately.[9] "[T]he denial of one does not require the grant of another."[10] But where the cross motions overlap, the Court may permissibly address the legal arguments together.[11] Each motion is viewed in the light most favorable to the nonmoving party.[12]

## III.    Analysis

### A.    Pakzadeh's Motion for Summary Judgment

Pakzadeh seeks summary judgment on Goodway's breach of contract claims as well as Goodway's request for injunctive relief. When ruling on a motion for summary judgment, the Court usually addresses the breach of contract claims first. Here, however, it begins with Pakzadeh's argument that Goodway cannot establish it is entitled to injunctive relief.

Goodway seeks an injunction prohibiting Pakzadeh from employment with AI Digital for the one-year period set forth in the Employment Agreement.[13] To obtain an injunction, Goodway

---

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[9] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[10] *Id.*

[11] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[12] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[13] The Court will address Goodway's request for injunctive relief as set forth in the Pretrial Order. The Court notes that in Goodway's Motion for Summary Judgment, it expanded its request for injunctive relief, asking the Court to preclude Pakzadeh from working for not only AI Digital but also any other Goodway competitor for one year. Absent an amendment, however, Goodway is bound by the relief set forth in the Pretrial Order. *See Courtney v. Safelite Glass Corp.*, 811 F. Supp. 1466, 1473-74 (D. Kan. 1992) (concluding that absent an amendment, the amount of damages in the pretrial order is the limit of damages which the plaintiff may seek); *see also* Fed. R. Civ. P. 16(d) (stating that the pretrial order controls the subsequent course of action unless modified by a subsequent order).

must show "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[14] Additionally, "[i]n fashioning a permanent injunction, the court must tailor the remedy narrowly to conform to the harm shown."[15]

Pakzadeh contends that she is entitled to summary judgment because Goodway does not meet the two of the four elements necessary for injunctive relief. She argues that Goodway cannot show that it will suffer irreparable harm if an injunction is not issued or that the harm to Goodway outweighs any harm an injunction would impose on Pakzadeh. Finally, Pakzadeh also argues that Goodway's requested injunction is not narrowly tailored to address the alleged harm.

### 1. Irreparable Harm

Pakzadeh contends that Goodway fails to show it will suffer irreparable harm because of her alleged breaches of the Employment Agreement. A plaintiff demonstrates irreparable harm by showing "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages."[16] "Purely speculative harm will not suffice."[17] The "injury must

---

Goodway does not move to amend the Pretrial Order, and thus, the Court will not consider Goodway's modified request for relief.

[14] *Roman Cath. Archdiocese of Kansas City in Kansas v. City of Mission Woods*, 385 F. Supp. 3d 1171, 1173–74 (D. Kan. 2019) (quoting Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1180 (10th Cir. 2003); Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 822 (10th Cir. 2007)).

[15] *Id*. (citing Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002)).

[16] *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th Cir.2009) (quoting *Greater Yellowstone Coal v. Flowers,* 321 F.3d 1250, 1258 (10th Cir. 2003)).

[17] *Id*.

be certain, great, actual 'and not theoretical.'"[18] "A plaintiff may establish irreparable harm by 'such factors as the difficulty in calculating damages . . . and existence of intangible harms such as loss of goodwill or competitive market position.'"[19]

A plaintiff's burden to prove irreparable harm is high,[20] and based on the evidence presented here, Goodway does not meet this burden. In its opposition brief, Goodway briefly states that "loss of goodwill, competitive advantage, and confidential client strategies are classic forms of irreparable injury that cannot be compensated by monetary damages alone." But this conclusory statement is not enough to show irreparable harm,[21] and Goodway offers no evidence that it will suffer a loss of goodwill or competitive advantage if an injunction is not issued. In fact, the undisputed evidence suggests the opposite. Pakzadeh submits unrebutted sworn testimony from her employer that the "health check" documents are not in use at AI Digital and that she has not shared any of Goodway's confidential information, including the contents of the files she downloaded, with AI Digital. Furthermore, Goodway does not identify a single account that Pakzadeh lured away from Goodway to AI Digital's benefit. Accordingly, the Court concludes that Goodway does not meet its burden to show it will suffer irreparable harm if an injunction is not issued.

---

[18] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.D.C. 1985)).

[19] *See Advisors Excel, LLC v. Zagula Kaye Consulting*, LLC, 2015 WL 736344, at *3 (D. Kan. Feb. 20, 2015) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004)).

[20] *Id.* at *3.

[21] *Id*. (citing *Dominion Video*, 356 F.3d at 1261).

*2.  Balance of Harms*

Pakzadeh next argues that Goodway does not show that the harm it will sustain without an injunction outweighs the harm to Pakzadeh if the Court issues the injunction. She argues that the injunction would preclude her from working in her chosen profession for an entire year resulting in significantly more harm to her than Goodway. The Court agrees. An injunction preventing Pakzadeh from working for AI Digital for a period of one year would unfairly deprive her and her family of an income and an ability to practice her profession. Goodway has not shown it will suffer any harm if an injunction is not issued. Indeed, Goodway does not even address this element of injunctive relief its opposition brief. Thus, Goodway fails to show that the balance of harms weighs in favor of the Court issuing an injunction.

*3.  Narrowly Tailored Relief*

Finally, Pakzadeh asserts that even if the Court were to issue an injunction, Goodway's proposed relief exceeds the bounds of the Employment Agreement. Goodway argues that its requested injunction is necessary for it to obtain the benefit of the bargain, but the Court is not convinced by this argument. The Employment Agreement imposes specific restrictions on Pakzadeh's post-employment conduct, namely that she cannot contact or solicit a Goodway client for a period of one year after termination of her employment. Goodway's proposed injunction far exceeds these restrictions because it prevents her from working for her current employer, AI Digital. Goodway did not bargain for this expanded relief in the Employment Agreement, nor does it show that such relief is necessary to address any harm it may suffer. Accordingly, Goodway's proposed injunction is not narrowly tailored to conform to the harm shown.

Even if the Court modifies the proposed injunctive relief to mirror the non-solicitation provision in the Agreement, Goodway's request for an injunction still fails because it is moot. The

non-solicitation period expired on September 11, 2025, one year after Pakzadeh's last day of work at Goodway. In any event, Pakzadeh has not had any contact with any of the accounts Goodway was concerned about since December 11, 2024.

Goodway contends that an injunction is not moot because courts allow a restrictive covenant to be equitably extended to account for a period of breach or on-going harm.[22] The case law Goodway relies upon, however, is inapposite. In *Vinculum, Inc. v. Goli Techs., LLC*,[23] the court held that the *damages* recoverable by the plaintiff could be extended in case of breach.[24] Contrary to Goodway's assertion, the court did not address whether the restrictive covenant period could be extended in case of breach. Furthermore, in *Synthes USA Sales, LLC v. Harrison*,[25] the court upheld contractual provisions that extend the restrictive covenant period in case of breach.[26] It did not hold, however, that the court may equitably extend the restrictive covenant period on its own accord.

The Employment Agreement does not contain any provision extending the non-solicitation restriction in case of Pakzadeh's breach, and the Court will not do so on its own. The non-solicitation period in the Employment Agreement has expired, and Pakzadeh has not had any contact with the accounts in question for over a year. Therefore, the Court finds that Goodway's request for injunctive relief is now moot.

---

[22] Goodway relies on case law from Pennsylvania because the Employment Agreement is governed by Pennsylvania law. The parties previously applied Pennsylvania law to other issues concerning the Employment Agreement without objection.

[23] 310 A.3d 231 (Pa. 2024).

[24] *Id.* at 250.

[25] 2014 WL 11210394 (Pa. Com. Pl. May 19, 2014) (citations omitted).

[26] *Id.* at *17.

In sum, the Court concludes that Goodway has not met its burden to show that it will suffer irreparable harm or that the harm to Goodway is greater than the harm to Pakzadeh if an injunction is not issued. In any event, Goodway's request for an injunction is now moot. Therefore, the Court grants summary judgment in favor of Pakzadeh on Goodway's request for injunctive relief.[27]

**B.    Goodway's Motion for Summary Judgment**

Because the Court grants summary judgment in Pakzadeh's favor as to Goodway's request for an injunction, the Court need not address Goodway's Motion for Summary Judgment. Therefore, it is denied.

**IT IS THEREFORE ORDERED** that Goodway's Motion for Summary Judgment (Doc. 54) is **DENIED**.

**IT IS FURTHER ORDERED** that Pakzadeh's Motion for Summary Judgment (Doc. 58) is **GRANTED**.

**IT IS SO ORDERED**. This case is closed.

Dated this 27th day of March, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[27] Goodway seeks only injunctive relief and not monetary damages. Having determined that injunctive relief is unwarranted, the Court declines to address Goodway's breach of contract claims or Goodway's argument that Pakzadeh should be sanctioned for spoliation of evidence.